**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

ARI WEITZNER and ARI WEITZNER,
M.D., P.C., Individually and on Behalf of
All Others Similarly Situated,

      Plaintiffs,

          v.

SANOFI PASTEUR, INC., formerly known
as AVENTIS PASTEUR INC., and
VAXSERVE, INC., formerly known as
VACCESS AMERICA, INC.,

      Defendants.

CIVIL ACTION NO. 3:11-CV-02198

(JUDGE CAPUTO)

## <u>MEMORANDUM</u>

This case concerns a number of facsimiles that were allegedly sent from Defendants to Plaintiffs in violation of the Telephone Consumer Protection Act of 1991 ("TCPA"), 47 U.S.C. § 227(b)(1)(C).

Presently before the Court is: (1) a Motion to Strike the November 29, 2016 Declaration of Ari Weitzer, M.D ("Third Weitzner Declaration") filed by Defendants Sanofi Pasteur, Inc., and Vaxserve, Inc. (collectively "Defendants"); (2) a Motion to Strike Plaintiffs' Answer to Defendants' Statement of Facts filed by Defendants; (3) a Motion for Summary Judgment filed by Defendants; and (4) a Motion for Class Certification filed by Plaintiffs Ari Weitzner and Ari Weitzner, M.D., P.C. (collectively "Plaintiffs"). Because the Third Weitzner Declaration is not a sham affidavit and the information it contains is capable of admission at trial, the Motion to Strike the Third Weitzner Declaration will be denied. The Motion to Strike Plaintiffs' Answer to Defendants' Statement of Facts, however, will be granted in part as Plaintiffs' failed to comply with the Local Rules. Defendants' Motion for Summary

Judgment will be granted in its entirety because *American Pipe* tolling does not apply to shield those who initiated a prior action and subsequently assert the same facts and claims in a new action. Because Defendants' Motion for Summary Judgment will be granted, Plaintiffs' Motion for Class Certification will be moot.

## I. Factual Background

**A. The Parties**

    *1.    Plaintiffs:*

Plaintiff Ari Weitzner, M.D. ("Dr. Weitzner"), is an ophthalmologist who previously maintained his office in Brooklyn, New York. (Doc. 1, ¶ 6). Dr. Weitzner is currently employed as an employee of Union Square Eye Care. (Doc. 106, ¶ 8). Previously, Dr. Weitzner practiced though his own professional corporation, Ari Weitzner, M.D., P.C.. (Doc. 116, ¶ 2).

Ari Weitzner, M.D., P.C. ("P.C."), is also a Plaintiff in the instant case. (Doc. 1, ¶ 7). The P.C. is a New York corporation that maintains an "active" status with the New York Secretary of State. (Doc. 116, Ex. A). While the P.C. remains active on paper, it is undisputed that the P.C. has closed; it has no assets, and no employees. (Doc. 106, ¶¶ 7, 44-46). Notably, Dr. Weitzner is the sole shareholder of the P.C.. (Doc. 106, ¶ 6).

    *2.    Defendants:*

Defendant Sanofi Pastuer, Inc. ("Sanofi") is a Delaware corporation that manufactures vaccines. (Doc. 106, ¶ 1). Defendant VaxServe, Inc. ("VaxServe") is a pharmaceutical distribution company based in Pennsylvania. (Doc. 106, ¶ 2). VaxServe is a wholly owned subsidiary of Sanofi, with a separate board of directors, business records, employees, and principal place of business. (Doc 106, ¶ 3).

**B. Conduct at Issue**:

Beginning on or prior to April 21, 2004, Plaintiffs allege that Defendants were

engaged in a nationwide fax-advertising campaign in order to promote the sale of commercial products. (Doc 1, ¶¶ 10-11, 17).

On April 21, 2004, Plaintiffs received a fax advertisement ("First Fax") via the fax machine at the offices of the P.C. (Doc. 106, at 23, 26). The First Fax offered discounts on pharmaceutical goods by various manufacturers. (Doc. 87, Ex. A). The fax denoted "VaxServe" in the upper right-hand corner. (Doc. 87, Ex. A). The fax does not indicate that it was sent by any party other than VaxServe. (Doc. 87, Ex. A; Doc. 106, at 25). Plaintiffs claim[1] to have received a second fax, also marked with the "VaxServe" stamp, on March 22, 2005 ("Second Fax"). (Doc. 116, at ¶ 7, Ex. C). The parties dispute who received the First and Second Fax. But, it has been admitted that the fax machine and number that received both faxes were registered to Dr. Walter Weitzner (Doc. 106, 27-29).

VaxServe admits to sending a number of advertisements during the time alleged by Plaintiffs; sending such advertisements were part of the company's business. (Doc. 106, ¶¶ 68-69). The decision regarding what products to include on any given advertisement was made internally at VaxServe. (Doc. 106, ¶ 68). In fact, none of the manufacturers, including Defendant Sanofi Pasteur, paid to include their products on the advertisements that were subsequently faxed. (Doc. 106, ¶ 69). In the instant matter, neither Plaintiffs nor Defendants are aware of how VaxServe came to possess the number for the fax machine in Dr. Weitzner's office. (Doc. 106, ¶¶ 70-73).

It was Dr. Weitzner's practice to collect unsolicited faxes received at his office and send them to Attorney Todd Bank, one of Plaintiffs' attorneys, once a week. (Doc. 106, ¶ 20). After reviewing the faxes that were passed to him by Dr. Weitzner, Attorney Bank would

---

[1] While this suit has been ongoing since November 28, 2011, Plaintiffs have mentioned the existence of the Second Fax for the first time in their Brief in Opposition to Defendants' motion for Summary Judgment.

file charges against the company responsible for the unsolicited faxes. (Doc. 106, ¶ 21).[2]

## C. The Complaint:

On November 26, 2011 Plaintiffs' filed this putative class action in this Court, alleging a violation of the TCPA. The class that Plaintiffs allege to represent has shifted a number of times over the course of this litigation. First, the Complaint defined the putative class as:

> [A]ll persons or entities (I) whose fax numbers were licensed, rented, or purchased by Defendants VaxServe or Sanofi from List Strategies, Inc.; (ii) whose fax numbers did not exist in Defendants' database on the date of Defendants' receipt thereof from List Strategies, Inc.; and (iii) who received an unsolicited fax advertisement transmitted to them on behalf of Defendants by VisionLab, Inc., Westfax, Inc., or Velofax LLP between February 14, 2005 and the date of the resolution of this lawsuit.

(Doc. 106, ¶ 15). But, in Plaintiffs' Memorandum in Support of their Motion for Class Certification, Plaintiffs identify the putative class as:

> [A]ll persons or entities to whom VisionLab, Inc., WestFax, Inc. or Velofax LLP sent facsimiles on behalf of Defendants between February 14, 2005 and the date of the resolution of this lawsuit for whom Defendants' only source of the name of the recipient was a list that had been provided to Defendants by List Strategies, Inc.

(Doc. 106, ¶ 16). Yet another change in the definition of the class is evident in Dr. Weitzner's Declaration in Support of the Motion for Class Certification. There, Plaintiffs defined the putative class as:

> [A]ll persons or entities that, between February 14, 2005, and the date of the resolution of this lawsuit, received faxes that were sent to them solely as a result of their fax numbers having been provided to the defendants by a company called List Strategies, Inc.

(Doc. 106 ¶ 17). Lastly, in the Third Weitzner Declaration and Plaintiffs' Memorandum in Opposition to Defendants' Motion to Strike, Plaintiffs make a final revision and define the class as beginning on February 14, 2001 and ending at the resolution of this action. (Doc. 152, at 19).

---

[2] Dr. Weitzner has filed at least 17 similar actions alleging violations of the TCPA. (Doc. 106, ¶ 33).

## II Procedural Background

**A. The State Court Action:**

Litigation remains pending in the Lackawanna County Court of Common Pleas involving Dr. Weitzner and the same Defendants for an alleged TCPA violation stemming from the same April 21, 2004 fax. (Doc. 106, ¶ 32). Dr. Weitzner commenced the state-court action with the filing of a class action complaint on February 14, 2005, seeking to represent a class of persons who received unsolicited fax advertisements from Defendants. The class identified in the state-court action was defined as: "[Dr. Weitzner] and all other individuals who received an unsolicited fax advertisement from Defendants between January 2, 2001 and the date of the resolution of this lawsuit." (Doc. 106, ¶ 31). Notably, the P.C. was neither a named-plaintiff nor identified as a putative class member in the state-court action. (Doc. 106 ¶¶ 34-36).

On June 27, 2008, Judge Minora[3] issued an opinion and order ruling on Defendants' motion for summary judgment and Dr. Weitzner's motion to amend the complaint's class definition. (Doc. 106, ¶ 50). The opinion concluded that a class could include only Pennsylvania-resident fax recipients, rather than the proposed nationwide class, and held that Dr. Weitzner was not a proper representative plaintiff for class action purposes. (Doc. 106, ¶ 50). Additionally, Judge Minora found that Dr. Weitzner presented unique questions of fact that would not be common to the class. (Doc. 106, ¶ 52). Judge Minora permitted Dr. Weitzner to proceed on his individual TCPA claim, but found that a two-year statute of limitations applied to the TCPA claims under Pennsylvania law, and thus limited Dr. Weitzner's claims to faxes he received within two years of the date on which the complaint was filed. (Doc. 106, ¶ 50).

---

[3] Judge Carmen D. Minora served as the presiding judge in *Weitzner v. Sanofi Pasteur, Inc.* in the Court of Common Pleas of Lackawanna County.

5

On July 25, 2008, Dr. Weitzner filed a notice of appeal from the state court's June 27, 2008 order. On June 3, 2009, the Superior Court concluded that the appeal was interlocutory and premature, and therefore quashed the appeal. The Superior Court noted that no motion for class certification was ever filed or decided by the Court of Common Pleas.

**B. The Federal Action:**

Plaintiffs commenced this action on November 26, 2011. (Doc. 1). On February 6, 2012, Defendants filed their Motion for Abstention, or in the alternative, to Dismiss Plaintiffs' Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), or, in the alternative, to Stay Proceedings. (Doc. 20). On May 14, 2012, this Court denied Defendants' Motion, specifically noting that it was not clear from the face of the complaint that the statute of limitations barred the current action, and thus it was not appropriate to dismiss at that time. (Doc. 37). The Court also declined to address the applicability, if any, of *American Pipe* tolling at that time. (Doc. 37, at 15).

On November 12, 2013, Defendants filed their Answers and Affirmative Defenses to Plaintiffs' Complaint. (Doc., at 57, 58). Just three days later, on November 15, 2013, Defendants served Offers of Judgment pursuant to Federal Rule of Civil Procedure 68 upon Plaintiffs; offering for judgment to be entered against Defendants for the maximum statutory relief available to Plaintiffs. (Doc. 60-1, at 1-2). Defendants filed a Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) on December 4, 2013. (Doc. 59). This Motion was denied by this Court by Order and Opinion dated March 12, 2014. (Doc. 68). The Third Circuit affirmed on April 6, 2016.

Plaintiffs' filed the instant Motion for Class Certification on June 28, 2016. (Doc. 86). Defendants filed the instant Motion for Summary Judgment on October 17, 2016. (Doc. 104). Pursuant to the Local Rule of the Middle District of Pennsylvania,

Defendants filed a Statement of Facts detailing the material facts at issue in the litigation. Plaintiffs filed their Answer to Defendants' Statement of Facts on November 29, 2016. (Doc. 118). Defendants have also filed two Motions to Strike: Motion to Strike November 29, 2016 Declaration of Ari Weitzner, M.D. (Doc. 143), and Motion to Strike Plaintiffs' Answer to Defendants' Statement of Facts. (Doc. 145). These Motions were filed on January 27, 2017. All four Motions pending in this action are ripe for review.

### III. Legal Standard

**A. Motion to Strike**

Defendants move to strike the Third Weitzner Declaration and portions of Plaintiffs' Answer to Defendants' Statement of Facts from the record. Although neither Rule 56 nor Local Rule 56.1 specifically provide for a motion to strike, courts have held that a party wishing to challenge statements of fact made by opponents for defect under either Rule should move to strike, or face waiver of their objection. *See, e.g.*, *In Re Unisys Sav. Plan Litig.*, 74 F.3d 420, 437 n.12 (3d Cir. 1996) (explaining that the proper vehicle for an objection to a violation of Rule 56 is a Motion to Strike); *Hartshorn v. Throop Borough*, No. 3:07-CV-01333, 2009 WL 761270, at *8-9 (M.D. Pa. Mar. 19, 2009) (striking Plaintiffs' Statement of Facts from the record for non-compliance with Local Rule 56.1).

Federal Rule of Civil Procedure 56 notes that affidavits in support or opposition to a motion for summary judgment shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. FED.R.CIV.P. 56(c)(4). If portions of an affidavit do not meet this standard, it is appropriate for the court to disregard the deficient portions of the record for the purpose of resolving a motion for summary judgment. *See In Re Unisys Sav. Plan Litig.*, 74 F.3d at 437 n.12.

Further, The United States District Court for the Middle District of Pennsylvania provides in its Local Rules that:

> A motion for summary judgment filed pursuant to Fed.R.Civ.P.56, shall be accompanied by a separate, short and concise statement of the material facts, in numbered paragraphs, as to which the moving party contends there is no genuine issue to be tried. The papers opposing a motion for summary judgment shall include a separate, short and concise statement of the material facts, responding to the numbered paragraphs set forth in the statement required in the foregoing paragraph, as to which it is contended that there exists a genuine issue to be tried. Statements of material facts in support of, or in opposition to, a motion shall include references to the parts of the record that support the statements. All material facts set forth in the statement required to be served by the moving party will be deemed to be admitted unless controverted by the *statement required to be served by the opposing party.*

Local Rule 56.1. The purpose of this rule is to "structure a party's summary judgment legal and factual theory into a format that permits and facilitates the court's direct and accurate consideration of the motion." *Gantt v. Absolute Machine Tools, Inc* ., No. 1:06-CV-1354, 2007 WL 2908254, at *3 (M.D. Pa. Oct. 4, 2007). It is well settled in this jurisdiction that a court "will adopt Defendants' Statement of Facts, except for those facts clearly disputed by Plaintiff with adequate record references." *McLaud v. Indus. Res.*, No. 3:14-CV-00737, 2016 WL 7048987 at *1 n.1 (M.D. Pa. Dec. 5, 2016); *see also United States ex rel. Paranich v. Sorgnard*, 286 F. Supp. 2d 445, 448 n.3 (M.D. Pa. 2003); *N.J. Mfrs. Ins. Co. V. Brady*, No. 3:15-CV-02236, 2017 WL 264457 at *2 n.1 (M.D. Pa. Jan. 20, 2017). Alternatively, if the party opposing summary judgment fails to comply with the Local Rule it is within the courts discretion to strike the offending Statement of Facts. *See Hartshorn*, 2009 WL 761270, at *8-9.

## B. Motion for Summary Judgment

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file,

8

together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Wright v. Corning*, 679 F.3d 101, 103 (3d Cir. 2012) (quoting *Orsatti v. N.J. State Police*, 71 F.3d 480, 482 (3d Cir. 1995)). A fact is material if proof of its existence or nonexistence might affect the outcome of the suit under the applicable substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Where there is no material fact in dispute, the moving party need only establish that it is entitled to judgment as a matter of law. *See Edelman v. Comm'r of Soc. Sec.*, 83 F.3d 68, 70 (3d Cir. 1996). Where, however, there is a disputed issue of material fact, summary judgment is appropriate only if the factual dispute is not a genuine one. *Anderson*, 477 U.S. at 247-48. An issue of material fact is genuine if "a reasonable jury could return a verdict for the nonmoving party." *Id*. at 248. Where there is a material fact in dispute, the moving party has the initial burden of proving that: (1) there is no genuine issue of material fact; and (2) the moving party is entitled to judgment as a matter of law. *See Howard Hess Dental Labs., Inc. v. Dentsply Int'l, Inc.*, 602 F.3d 237, 251 (3d Cir. 2010). The moving party may present its own evidence or, where the non-moving party has the burden of proof, simply point out to the court that "the nonmoving party has failed to make a sufficient showing on an essential element of her case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

When considering whether there are genuine issues of material fact, the court is required to "examine the evidence of record in the light most favorable to the party opposing summary judgment, and resolve all reasonable inferences in that party's favor." *Wishkin v. Potter*, 476 F.3d 180, 184 (3d Cir. 2007). Once the moving party has satisfied its initial burden, the burden shifts to the non-moving party to either present affirmative evidence supporting its version of the material facts or to refute the moving party's contention that the facts entitle it to judgment

as a matter of law. *Anderson*, 477 U.S. at 256-57. The Court need not accept mere conclusory allegations, whether they are made in the complaint or a sworn statement. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990).

In order to prevail on a motion for summary judgment, the non-moving party must show "specific facts such that a reasonable jury could find in that party's favor, thereby establishing a genuine issue of fact for trial." *Galli v. N.J. Meadowlands Comm'n*, 490 F.3d 265, 270 (3d Cir. 2007) (citing FED. R. CIV. P. 56(e)). Although the non-moving party's evidence may be either direct or circumstantial, and "need not be as great as a preponderance, the evidence must be more than a scintilla." *Id*. (quoting *Hugh v. Butler Cnty. Family YMCA*, 418 F.3d 265, 267 (3d Cir. 2005)). In deciding a motion for summary judgment, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

### IV. Discussion

**A. Motion to Strike November 29, 2016 Declaration of Ari Weitzner, M.D.:**

Defendants' now argue that the Third Weitzner Declaration was improper, and thus the Declaration and any reference to it should be stricken. Defendants' base their claim of impropriety on three grounds. First, Defendants invoke the Sham Affidavit Doctrine to argue that the Third Weitzner Declaration must be stricken as it disputes Dr. Weitzner's earlier sworn testimony without providing an adequate explanation for the conflict. Second, Defendants' argue that Dr. Weitzner lacked the personal knowledge required to author a Declaration compliant with Federal Rule of Civil Procedure 56(c). Third, Defendants contend that the Declaration serves to impermissibly expand the class definition in such a way that unduly prejudices the Defendants.

Plaintiffs do not directly address whether the Third Weitzner Declaration should be considered under the Sham Affidavit Doctrine, but do point to

independent evidence to bolster the Declaration. Further, Plaintiffs fail to directly address whether Dr. Weitzner had the requisite personal knowledge of the claims and transactions in the Declaration and in the Complaint. However, Plaintiffs do argue that the information in the Declaration is capable of admission at trial and as such should be considered at summary judgment. Finally, Plaintiffs argue that the expansion of the class definition does not unduly prejudice the Defendants.

1. *The Sham Affidavit Doctrine does not bar the Third Weitzner Declaration*.

While the Federal Rules of Civil Procedure do not address how courts should address contradictory affidavits, the United States Court of Appeals for the Third Circuit ("Third Circuit") has held that "a party may not create a material issue of fact to defeat summary judgment by filling an affidavit disputing his or her own sworn testimony without demonstrating a plausible explanation for the conduct." *Baer v. Chase*, 392 F.3d 609, 624 (3d Cir. 2004) (citing *Hackman v. Valley Fair*, 932 F.2d 239, 241 (3d Cir. 1991)). "This principle of summary judgment practice is often referred to as the 'sham affidavit doctrine.'" *Price v. Trans Union, LLC*, 737 F. Supp. 2d 281, 286 (E.D. Pa. 2010) (internal citation omitted). The doctrine's purpose is to remove from the record any "affidavit that indicates only that the affiant cannot maintain a consistent story or is willing to offer a statement *solely* for the purpose of defeating summary judgment.*" York Int'l Corp. V. Liberty Mut. Ins. Co.*, No. 1:10-CV-0692, 2015 WL 4162981, at *15 (M.D. Pa. July, 9, 2015) (emphasis added). To that end, the doctrine permits a district court to disregard an "affidavit that is submitted in opposition to a motion for summary judgment when the affidavit contradicts the affiant's prior deposition testimony." *Baer*, 392 F.3d at 624.

Some courts have adopted a strict interpretation of the Sham Affidavit

Doctrine. These courts will strike *any* affidavit that contradicts prior sworn deposition testimony. *See, e.g.*, *Jones v. General Motors Corp.*, 939 F.2d 380, 385 (6th Cir. 1991) ("[I]t is well settled that a plaintiff may not create a factual issue for the purpose of defeating a motion for summary judgment by filing an affidavit contradicting a statement the plaintiff made in a prior deposition."); *Buckner v. Sam's Club, Inc.*, 75 F.3d 290, 292-93 (7th Cir. 1996) ("As a general rule, the law of this circuit does not permit a party to create an issue of fact by submitting an affidavit whose conclusions contradict prior deposition or other sworn testimony."). The Third Circuit has not been so unforgiving. Rather, the Third Circuit has adopted a more flexible approach which provides that an affidavit will not be stricken "[w]hen there is independent evidence in the record to bolster an otherwise questionable affidavit," or when the affiant is able to provide a "satisfactory explanation" for the conflict between the prior deposition and the affidavit. *Hackman*, 932 F.2d at 241. However, when independent evidence does not exist and the affiant "does not explain the contradiction between a subsequent affidavit and a prior deposition, it is appropriate for the district court to disregard the subsequent affidavit and the alleged factual issue in dispute as sham. . . ." *Jiminez v. All Am. Rathskeller, Inc.*, 503 F.3d 247 (3d Cir. 2007).

In this case, there is no question that the story provided by Dr. Weitzner has experienced variation over the course of litigation. First, and most importantly, Defendants point to the First Weitzner Declaration and subsequent deposition testimony where Dr. Weitzner made no mention of receiving any fax except the one received on April 21, 2004. (Doc. 106, ¶ 23-24) Now, in his Third Declaration, Dr. Weitzner claims he received a second fax on March 22, 2005. (Doc. 116). This would place Dr. Weitzner firmly within the class as it was defined in the Motion for Class Certification, and First Weitzner Declaration. As properly noted by Defendants, this position was altered after Dr. Weitzner

12

acknowledged at his second deposition on September 20, 2016 that if the First Fax was the only fax he or the P.C. received he would not be a member of the class he sought to represent. (Doc. 105, Ex. A).

While the timing of this modification is suspect, the Third Circuit directs this court to determine whether there is independent evidence or a satisfactory explanation to support the modification. Here, there is. Plaintiffs have produced evidence to support the modification: a March 22, 2005 fax in its entirety. (Doc. 116, Ex. B). The existence of the fax makes it more likely that Dr. Weitzner was simply "mistaken, confused, or without possession of all the facts during" his contradictory deposition, and negates the notion that he authored the Third Declaration with the sole intent to avoid summary judgment. *Rossi v. All Holding Co.*, No. 3:CV-11-1641, 2014 WL 346934, at * 7 (M.D. Pa. Jan. 30, 2014) (citing *Jiminez*, 503 F.3d at 254). This change in Weitzner's story will not render his Third Declaration a "sham."

Defendants also contend that the Third Weitzner Declaration contradicts prior deposition testimony related to the status of Ari Weitzner, M.D., P.C.. Defendants argue that Dr. Weitzner has stated that the P.C. was closed, and at other times that it was active. Defendants point to the Second–now withdrawn–Weitzner Declaration and Dr. Weitzner's deposition testimony in an attempt to show that regarding the P.C. as active in the Third Declaration is a variation in Weitzner's story that contradicts prior sworn testimony. In the Second Declaration, Dr. Weitzner states that:

> The previous declaration that I submitted contained two oversights. First I left my optholmology practice in 2015 and joined one called Union Square Eye Care in Manhattan. However, my professional corporation, of which I am still the sole principal, has continued to maintain active status.

(Doc. 101, ¶ 2). Defendants argue that this contradicts his prior deposition testimony where he stated that the P.C. transacts no business, and has no employees. (Doc. 147, Ex. A at 25). But, Defendants are incorrect.

13

In each of the three Weitzner Declarations, Dr. Weitzner states that the P.C. remains in active status. As Plaintiffs correctly note, Defendants cite to no authority that supports the notion that a business must be operating to be considered "active." The fact that the business is not currently operating has not impacted the "active" status claimed by Dr. Weitzner or reported by the New York Department of State. Simply, the Sham Affidavit Doctrine does not apply on these facts.

Finally, the Defendants argue that the Third Weitzner Declaration contradicts prior sworn testimony provided by Dr. Weitzner regarding who received the faxes at issue. But, Dr. Weitzner has maintained throughout all three Declarations that the P.C. received a fax. This is evidenced by the fact the P.C. was named in each Declaration. Defendants point to his deposition testimony in which Dr. Weitzner states that the P.C. received no fax. (Doc. 105, Ex. A at 113.) While true, this contradiction does not render the Declaration a "sham." It is clear to the Court from the provided deposition testimony that Dr. Weitzner was, and still may be, "confused" about the distinction between his personal representation and his representation of the P.C..[4] *See Rossi*, 2014 WL 346934, at * 7.  For this reason, this discrepancy will not cause the Court to strike the Third Weitzner Declaration.

 2. *The requirement of personal knowledge will not bar the Third Weitzner Declaration.*

Defendants argue that the Third Weitzner Declaration was not based on Dr. Weitzner's personal knowledge. Defendants only make a generalized claim that the entire Affidavit lacks personal knowledge, and does not point to a specific paragraph in the Third Weitzner Declaration. But, Defendants' argument references paragraphs seven and eight by implication. Thus, this Court will limit its analysis to those two

---

[4]     On numerous occasions in Dr. Weitzner's third deposition he had to be reminded that there was a difference between his personal and representative capacity. And, on multiple occasions he confused the two. *See, e.g.*, Doc. 143-4, at 64:10-25; 65:1-5.

paragraphs in the Third Weitzner Declaration.

Federal Rule of Civil Procedure 56(c)(4) provides that "[a]n affidavit or declaration used to support a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." FED.R.CIV.P. 56(c)(4). As such, a court should not credit statements in affidavits that amount to "unsupported assertions made in the absence of personal knowledge" *Reynolds v. Dep't of Army*, 439 Fed. Appx. 150, 152 (3d Cir. 2011). However, otherwise inadmissible evidence may be considered on summary judgment if the evidence is capable of being presented in an admissible form at trial. *See, e.g.*, *J.F. Feeser, Inc. v. Serv-A-Portion, Inc.*, 909 F.2d 1524, 1542 (3d Cir. 1990) ("We thus concluded that hearsay evidence produced in an affidavit opposing summary judgment may be considered if the out-of-court declarant could later present the evidence through direct testimony, i.e., in a form that would be admissible at trial."); *Petruzzi's IGA Supermarkets v. Darling-Delaware Co.*, 998 F.2d 1224, 1235 n.9 (3d Cir. 1993) ("While this statement as it stands now is hearsay, in this circuit it can be considered on a motion for summary judgment because it is capable of being admissible at trial."). Thus, this analysis runs parallel to, and must consider, the Federal Rules of Evidence.

Federal Rule of Evidence 602 governs the scope of witness testimony. Namely, it permits a witness to "testify to a matter only if sufficient evidence is introduced to support a finding that the witness has personal knowledge of the matter." FED.R.EVID. 602. The threshold for admissibility created by Rule 602 is quite low; testimony should be admitted if the judge could reasonably find that the witness perceived the events. *See, e.g.*, *Knopick v. Downey*, No. 1:09-CV-1287, 2013 WL 1882983, at *12 (M.D. Pa. May 6, 2013) *(*citing *Sullivan v. Warminster Twp.*, 461 F. App'x 157, 162 (3d Cir. 2012)). But, courts have not extended such leniency to allow witness testimony that is merely based on speculation as to what a third party believed or knew. *Id.*

Further, the Federal Rules of Evidence generally exclude hearsay evidence.

15

Hearsay is an out-of-court statement offered into evidence to prove the truth of the matter asserted. *See* FED.R.EVID. 801(c). But, not all hearsay statements are inadmissible. In fact, the Federal Rules of Evidence provide that while some statements meet the traditional definition of hearsay they are considered "not hearsay." *See* FED.R.EVID. 801(d).

Defendants' contention that the entire Third Weitzner Declaration lacks personal knowledge is incorrect. Rather, as detailed below, certain averments within the Declaration lacked sufficient personal knowledge as required by the Federal Rules.

First, paragraph seven of the Third Weitzner Declaration lacks the requisite personal knowledge. Paragraph seven states:

> Following discussions that I had about the class period with my counsel, Mr. Bank, to whom I had regularly sent my fax advertisements in 2004 and 2005, *Mr. Bank informed me* that there were additional faxes of the same type as the first Fax that were sent to the same fax number. One of these faxes was sent on or about March 22, 2005. ("Second Fax"). In addition, the Second Fax was sent to the same fax machine that had received the First Fax.

(Doc 116, at ¶ 7 ) (emphasis added). As Defendants correctly note, Dr. Weitzner did not have the requisite personal knowledge to make this statement. Dr. Weitzner admitted as much in his deposition on January 10, 2017:

> Q: Do you have any understanding, Dr. Weitzner of how many faxes you actually received other than based on the expertise of your lawyers?
>
> A: I have no independent recollection of how many faxes I received. That's exactly right.

(Doc. 145-4, at 62:21-25).

While Federal Rule of Civil Procedure 56(c)(4) and Federal Rule of Evidence 602 seem to bar this evidence because Dr. Weitzner admittedly lacked personal knowledge, it is important to remember that otherwise inadmissible evidence may be considered at summary judgment if it is capable of being presented in an admissible form at trial. While the existence and contents of the Second Fax as it stands now are inadmissible hearsay, it may still be considered at summary judgment because both are capable of being presented in an admissible form at trial. *See* FED.R.EVID.

801(d)(2); *Frankenberry v. FBI*, No. 3:08-1565, 2012 U.S. Dist. LEXIS 39027, at *19-20 (citing *J.F. Freeser, Inc.*, 909 F.2d at 1542; *Petruzzi's IGA Supermarkets, Inc.*, 998 F.2d at 1235 n.9). As such, it would be inappropriate to strike paragraph seven.

Second, paragraph eight of the Third Weitzner Declaration arguably lacks the requisite personal knowledge. Paragraph eight states:

> I understand that, based on several parts of this Complaint in this lawsuit, and depending upon this Court's resolution of legal issues pertaining to the statute of limitations, the class period could begin as early as February 14, 2001.

Defendants asked Dr. Weitzner about this averment in his third deposition:

> Q: Is it accurate to say that you have no personal knowledge of any parts of the Complaint that could result in the class period beginning as early as February 14, 2001?
>
> A: I have no personal knowledge. I base – I rely on the expertise of my attorneys.
>
> Q: All right. So this understanding, then, that you have is based totally on the expertise of your lawyers?
>
> A: That's exactly right.

While Defendants' properly note that he has no personal knowledge regarding the parts of the Complaint that would allow for the expansion of the class period, paragraph eight is capable of admission at trial. Remember, the standard imposed by Rule 602 presents a low bar for admission. *See United States v. Gerard*, 507 Fed. App'x 218, 222 (3d Cir. 2012) ("Rule 602 creates a low threshold for admissibility, and a judge should admit witness testimony if the jury could reasonably find that the witness perceived the event."); *United States v. Hickey*, 917 F.2d 901, 904 (6th Cir. 1990) ("Testimony should not be excluded for lack of personal knowledge unless no reasonable juror could believe that the witness had the ability and opportunity to perceive the event that he testifies about."); *Sullivan*, 461 F. App'x at 162. All Plaintiffs would need to show is that Dr. Weitzner "perceived the events" that caused him to make the conclusions regarding the expansion of the class definition in his Third Declaration. Those "events" were meetings with his lawyers, and experiences at

depositions held by the Defendants. When asked about those events at his third deposition, Dr. Weitzner provided a level of personal knowledge that would overcome a challenge under Rule 602 at trial. (Doc. 147, Ex. A at 47-48). Therefore, paragraph 8 will not be stricken.

3.    *The Third Weitzner Declaration does not impermissibly seek to expand the class definition and amendment is not prejudicial.*

Defendants' argue that although Plaintiffs assert that the Third Weitzner Declaration merely refines Dr. Weitzner's understanding of the class definition, Plaintiffs in fact impermissibly seek to amend the scope and definition of the class sought to be certified without leave of court. Defendants contend that such leave would be required. Further, Defendants believe that permitting any amendment at this stage would be prejudicial because the Third Weitzner Declaration was filed after Defendants had submitted their Brief in Opposition to Class Certification. Plaintiffs disagree. Plaintiffs contend that leave of court is not required for amendment, and that Defendants have suffered no prejudice as a result of such amendment.

Federal Rule of Civil Procedure 23(c)(1) provides a mechanism for modification of class definition, and as such "[a] court is not bound by the class definition proposed in the complaint." *Weisfeld v. Sun Chem. Corp.*, 84 F. App'x. 257, 259 (3d Cir. 2004) (citing *Robidoux v. Celani*, 987 F.2d 931, 937 (2d Cir. 1993)). This is a sensible rule because holding a plaintiff to their original class definition "would ignore the ongoing refinement and give-and-take inherent in class action litigation, particularly in the formation of a workable class definition." *In the Matter of: Monumental Life Insurance Co.*, 365 F.3d 408, 414 (5th Cir. 2004). To this end, courts have allowed Plaintiffs to substantially modify proposed class definitions initially set forth in their Complaint throughout the course of litigation. *See, e.g.*, *Gates v. Rohm & Haas Co.*, 265 F.R.D. 208, 215 n.10 (E.D. Pa. 2010) (citing *Robidoux*, 987 F.2d at 937) (noting that Plaintiffs were permitted to substantially modify the proposed class definition in their reply brief).

Here, the class definition provided in the Complaint identifies a class period

18

from February 14, 2005 to the date of the resolution of this lawsuit. The First Weitzner Declaration contains a slightly different class definition than the Complaint.  The Second Weitzner Declaration–now withdrawn–defined the class from June 1, 2002 to February 13, 2005. Now, in the Third Weitzner Declaration and Plaintiffs' Memorandum in Opposition to Defendants' Motion to Strike Declarations, define the class as beginning on February 14, 2001 to the resolution of this action. (Doc. 152, at 19). Such modification is illustrative of the "give-and-take inherent in class action litigation," and not of an attempt to unduly prejudice Defendants.

While expansion of the class period has been permitted in the past, this Court must still determine whether the modification of the class definition at this time would unduly prejudice Defendants. Defendants' correctly note that the modification of the class currently at issue occurred in the Third Weitzner Declaration. This Declaration was filed on November 29, 2016 (Doc. 116); after Defendants had already filed their Brief in Opposition to Plaintiffs' Motion for Class Certification. (Doc. 102). Defendants claim that "[s]uch amendment this late in the litigation is prejudicial to Defendants, who are deprived of meaningful opportunity to present defenses to these additional claims." (Doc. 154, at 17). However, Defendants fail to meaningfully articulate the defenses foreclosed by the timing of the modification. Rather, Defendants throughout their brief call the claims included in this modification "untimely," or "time-barred." (Doc. 154, at 17; Doc. 154, at 12). As Plaintiffs note, Defendants already raise arguments related to the timeliness of claims in their papers. (Doc. 152 at 21-22). Moreover, Defendants had the opportunity to respond to the proposed class expansion in their brief in response to Plaintiffs' Brief in Opposition to Summary Judgment. Since Defendants have failed to offer any concrete prejudice caused by the timing of the modification, this Court will not grant the Motion to Strike.

**B. Motion to Strike Plaintiffs' Answer to Defendants' Statement of Facts:**

Defendants move to strike Plaintiffs' Answer to Defendants' Statement of Facts pursuant to Local Rule 56.1 and Federal Rule of Civil Procedure 56. In doing so,

Defendants contend that Plaintiffs failed to properly prepare their response in three distinct respects. First, Defendants claim the Plaintiffs failed to properly deny facts provided in Defendants' Statement of Facts as required by Federal Rule of Civil Procedure 56(e) and Local Rule 56.1. Their argument follows that since Plaintiffs failed to make any denial, even generally, to forty-nine (49) of the seventy-three (73) statements of fact produced by Defendants, all forty-nine (49) should be admitted. Second, Defendants argue that any denial supported by reference to the Third Weitzner Declaration is improper as the Declaration should be considered a "sham affidavit." Such a finding would strike seven (7) of Plaintiffs' responses. Finally, Defendants contend that Plaintiffs' response impermissibly contains lengthy argument, and thus should be stricken from the record. If Defendants are correct, only three (3) statements offered by Plaintiffs would remain.

Plaintiffs do not dispute that they failed to make even general denials to the forty-nine (49) statements identified by Defendants. Rather, Plaintiffs focus their argument on the propriety of the Third Weitzner Declaration and the form of statements contained in their response. Specifically, Plaintiffs claim that Defendants' reference and reliance on the Third Weitzner Declaration is improper under Local Rule 7.8(a). Further, without reference to a single authority, Plaintiffs contend that the statements contained within their response are not lengthy or argumentative in violation of the Federal or Local Rules.

1.     *The forty-nine (49) unopposed statements contained in Defendants' Statement of Facts will be admitted.*

Defendants' correctly note that Plaintiffs failed to comply with Local Rule 56.1 when they did not specifically deny the averments made in Defendants' Statement of Facts. (Doc. 146, at 5-6). Rather than responding to each statement made by Defendants, (Doc. 106), Plaintiffs decided to respond to a mere twenty-four (24). (Doc. 118). Because Plaintiffs failed to provide any opposition to forty-nine (49) of the seventy-three (73) paragraphs in Defendants' Statement of Facts, all facts within the

noted forty-nine (49) paragraphs will be considered unopposed and admitted under Local Rule 56.1.[5] *See Sorgnard*, 286 F. Supp. 2d at 448 n.3.

      2.    *Denials Supported by the Third Declaration of Dr. Weitzner will Not be Stricken.*

As noted above, the Motion to Strike the Third Weitzner Declaration will be denied. For this reason, any citation to the Third Declaration in Plaintiffs' Answer to Defendants' Statement of Facts will remain similarly intact. Notably, Local Rule 7.8(a) had no role in the Courts analysis.

      3.    *The form of Statements within Plaintiffs' response violate Local Rule 56.1 and will be stricken.*

As mentioned earlier, Local Rule 56.1 directs parties moving for summary judgment to provide the court with "a separate, short and concise statement of material facts, in numbered paragraphs, as to which the moving party contends there is no genuine issue to be tried." Local Rule 56.1. Similarly it requires the non-moving party provide "a separate, short and concise statement of the material facts, responding to the numbered paragraphs set forth in the statement required [from the moving party], as to which it is contended that there exists a genuine issue to be tried." *Id.* Both statements must "include references to the parts of the record that support" their factual statements. *Id.* The purpose of this statement of facts is "to structure a party's summary judgment legal and factual theory into a format that permits and facilitates the court's direct and accurate consideration to the motion." *Hartshorn*, 2009 WL 761270, at *3 (internal citation omitted). To this end, a proper statement of facts should enable "the court to identify contested facts expeditiously and [prevent] factual disputes from becoming obscured by a lengthy record." *Pinegar v. Shinseki*, No. 1:07-

---

[5]    The paragraphs in Defendants' Statement of Facts that were unopposed and will be deemed admitted are: 1; 2; 3; 4; 5; 8; 9; 10; 11; 12; 14; 15; 16; 17; 18; 19; 20; 23; 26; 27; 29; 30; 31; 32; 33; 34; 35; 39; 46; 47; 50; 51; 53; 55; 56; 57; 58; 62; 63; 64; 65; 66; 67; 68; 69; 70; 71; 72; and 73.

CV-0313, 2009 WL 1324125, at *1 (M.D. Pa. May, 12, 2009). Courts have the discretion to either strike a statement for non-compliance with the local rule, or deem the opposing statement admitted. *See, e.g.*, *Hartshorn*, 2009 WL 761270, at *3; *Armenti v. Tomalis*, No. 1:12-CV-2039, 2016 WL 6493483, at *1-2 (M.D. Pa. Nov. 2, 2016).

Defendants contend that many of Plaintiffs' responses contain impermissible argument and fail to provide "concise" statements in violation of Local Rule 56.1. In large part this Court agrees. Plaintiffs' have provided a lengthy[6] response that runs afoul of the purpose for Local Rule 56.1. The statements identified by Defendants[7] regularly include long excerpts from deposition testimony in an attempt to explain or contextualize a fact presented by the Defendants. Facially, this is impermissible under the Local Rule. Because this Court finds that many of the statements within Plaintiffs' response contravene the purpose of Local Rule 56.1, those statements will be stricken.

Therefore, only six (6) statements[8] made in Defendants' Statement of Facts will be considered contested for purposes of summary judgment.

## C. Motion for Summary Judgment:

Defendants' base their Motion for Summary Judgment on four separate and

---

[6]      Plaintiffs' response can not be considered concise. While only responding to 24 of the 73 averments made in Defendants' Statement of Fact, Plaintiffs' response is over twice as long. As such, Plaintiffs' response is in violation of the Local Rules.

[7]      Defendants' specifically note the argumentative nature of Plaintiffs' responses to paragraphs: 13; 21; 24; 25; 36; 37; 38; 39; 41; 42; 43; 48; 49; 52; 54; 59; 60; and 61. All will be excluded. Paragraph 40 will be similarly excluded for violating the Local Rule.

[8]      The contested statements are found in paragraphs 6, 7, 22, 28, 44, and 45 of Defendants' Statement of Facts.

distinct grounds.[9] First, Defendants' argue that Plaintiffs' claims are time-barred by the statute of limitations because the tolling principles of *American Pipe* do not apply, and alternatively, even if they do apply, Plaintiffs filed their federal complaint after the statute of limitations expired. Second, Defendants argue that Plaintiffs lack standing because Defendants believe that neither Dr. Weitzner, nor his P.C. suffered cognizable injury during the defined class period. Third, Defendants contend that Plaintiffs have failed to demonstrate that Defendant Sanofi Pasteur, Inc. sent a fax to Plaintiffs, and as such Defendant Sanofi must be removed from this action. Finally, Defendants argue that the current named Plaintiffs are not members of the class they seek to represent, and thus as a matter of law summary judgment should be granted.

    1.    Plaintiffs' Individual and Class Claims are Time-Barred[10]

In *American Pipe & Construction Company v. Utah*, the Supreme Court held that "the commencement of a class action suspends the applicable statute of limitations as to all asserted members of the class who would have been parties had

---

[9]    This Court will not address three of the four arguments presented by Defendants' because the inapplicability of American Pipe tolling is dispositive.

[10]    Defendants did not affirmatively raise the statute of limitations defense in their answer to the complaint as required by Federal Rule of Civil Procedure 8(c), but this Court will still consider whether Plaintiffs claims are time-barred. Federal Rule of Civil Procedure 8(c) requires that "[i]n a pleading to a preceding pleading, a party should set forth affirmatively" the defense of statute of limitations. FED.R.CIV.P. 8(c). Normally, when an a defendant fails to plead an affirmative defense in their answer, the defense is waived. *See Charpentier v. Godsil*, 937 F.2d 859, 863-64 (3d Cir. 1991). However, since Plaintiffs offered no objection to the defense "when expressly invoked in [Defendants] motion for summary judgment," the Court will consider its validity. *Mitchelll v. Guzick*, No. 3:02-CV-0178, 2004 U.S. Dist. LEXIS 29895, at *21 n.4 (M.D. Pa. July 26, 2004); *see Printz v. Greate Bay Cassino Corp.*, 705 F.2d 692, 694 (3d Cir. 1983) (noting that Fed.R.Civ.P 15(c) provides that issues tried by the express or implied consent of the parties "are treated in all respects as if they had been raised in the pleadings").

the suit been permitted to continue as a class action." 414 U.S. 538, 554 (1974). In other words, the filing of a class action lawsuit tolls the statute of limitations as to all asserted members of the previously filed class. *Id.* Tolling lasts "until the propriety of maintaining the suit as a class action is determined." *Leyse v. Bank of America N.A.*, 538 F. App'x 156, 161 (3d Cir. 2013), *vacated on other grounds*, 804 F.3d 316 (3d Cir. 2015); *see Sawyer v. Atlas Heating and Sheet Metal Works, Inc*., 642 F.3d 560, 563 (7th Cir. 2011) ("Tolling [under *American Pipe*] lasts from the day a class claim is asserted until the day the suit is conclusively not a class action–which may be because the judge rules adversely to the plaintiff, or because the plaintiff reads the handwriting on the wall and decides not to throw good money after bad.").

This doctrine is at the heart of the dispute between the parties before this Court at summary judgment. If the doctrine does not apply, Defendants are owed summary judgment as Plaintiffs' action would be barred as a matter of law. In this case, a four-year statute of limitations is appropriate.[11] The First Fax was received by Plaintiffs on April 21, 2004. (Doc. 106, ¶ 23). This means that without application of *American Pipe*, any federal complaint related to the First Fax would have needed to be filed by April 21, 2008. The Second Fax was received by Plaintiffs on March 22, 2005, and thus any federal complaint related to the Second Fax would have needed to be filed by March 22, 2009. Plaintiffs filed their federal Complaint on November 26, 2011. (Doc. 1). Therefore, without the application of a tolling doctrine it is clear Plaintiffs' Complaint is untimely.

---

[11]     As this Court suggested during the disposition of the Motion to Dismiss, the four-year statute of limitations will apply. *See Hawk Valley, Inc., v. Taylor*, No. 10-CV-00804, 2012 WL 1079965, at *9-10 (E.D. Pa. Mar. 30, 2012) (finding *Mims v. Arrow Fin. Servs.*, LLC., 565 U.S. 368 (2012), an additional support for rejecting the argument that state statute of limitations applied to a TCPA claim); *see also*, 645 F.3d at 561 (7th Cir. 2011).

a. *Class Claims*

The first question this Court must address is whether or not *American Pipe* tolling is applicable to the class claims at issue. Defendants suggest that *American Pipe* is only applicable for class claims when: (1) the proposed class is substantively identical to the class sought to be certified in the state-court action; (2) Plaintiffs were unnamed class members in the state-court action; and (3) Plaintiffs are new class representatives for the proposed class.

First, for tolling to apply, the claims do not have to be identical, but only substantially similar to those brought in the original class action. *See In re Linerboard Antitrust Litigation*, 223 F.R.D. 335, 351 (E.D. Pa. 2009) (citing *Crown, Cork & Seal, Inc. v. Parker*, 462 U.S. 345, 355 (1983)). Defendants properly identify this requirement. But, Defendants incorrectly suggest that Plaintiffs claims are not substantially similar to those brought in the original action. The exact same legal question is at issue: Did the Defendants violate the TCPA? And, the factual averments presented by the state and federal claims are nearly identical with exception for the class period. Therefore, when viewing the facts in the light most favorable to Plaintiffs, it is evident that Plaintiffs established that they meet this requirement.

Second, when applying *American Pipe* to subsequent class actions, Defendants are correct that the Third Circuit has limited the doctrine's application to subsequent class actions brought by *new* would-be class representatives. In fact, the Third Circuit has recently stated that *American Pipe* tolling does not apply when a named-plaintiff in a prior action subsequently files another class action based on the same claim as a named-plaintiff yet again. *See Leyse*, 538 Fed. App'x at 162. (*"American Pipe* was intended to prevent repetitious filings and to protect unnamed plaintiffs. This concern is not relevant with respect to the named plaintiff in the prior class action. Thus, we agree that the Supreme Court did not intend for *American Pipe* tolling to protect individuals like [plaintiff], who initiated the prior class action and was a named plaintiff in that prior suit."); *see also Vincent v. Money Store*, 915 F. Supp. 2d 553, 561 (S.D. N.Y. 2013)

(explaining that "[t]he policy behind *American Pipe* counsels against allowing named plaintiffs in a prior class action, as opposed to absent class members, to have their claims tolled."). This requirement prevents an earlier class representative from attempting to "resuscitate a class that a court held to be inappropriate as a class action." *Yang v. Odom*, 392 F.3d 97, 104 (3d Cir. 2004) (citing *McKowan & Co., Ltd. v. Jasmine, Ltd.*, 295 F.3d 380, (3d Cir. 2002)).

In this case, it does appear that Dr. Weinstein is attempting to "resuscitate" the failed state class action. As noted above, the legal and factual claims presented in the state and federal actions are nearly identical. Notably, Dr. Weitzner was the named representative for the class in the state court action, and is one of the named representatives in the action now before this Court. This runs directly contrary to the purpose of *American Pipe* tolling as it was described by the Third Circuit in *Leyse*. *See* 538 Fed. App'x at 162. It is true, that Ari Weitzner, M.D., P.C. was not a named representative in the action below. However, it would be a stretch of logic to imagine the P.C., an entity solely owned and occasionally operated by Dr. Weitzner, could be used to circumvent the purpose of *American Pipe*. If that were the case, a single Plaintiff could continue to "resuscitate" claims repeatedly by hiding behind a corporate veil. Because Dr. Weitzner was the class representative in the state court action, *American Pipe* will not apply to the class claims.

Since *American Pipe* tolling is inapplicable to the class claims, Defendants are owed summary judgment on the class claims because they are time-barred. As such, summary judgment will be granted in favor of the Defendants on the class claims presently before this Court.

> b.   *Individual Claims*

*American Pipe* tolling is similarly unavailable for Dr. Weitzner's individual claim. Just as with new class claims, individual claims may only be brought by those that did not earlier serve as class representative. The Supreme Court has suggested as much recently when it stated that *American Pipe* was grounded in "policies of judicial

administration," and "demonstrate only that *a person not a party* to a class suit may receive certain benefits (such as the tolling of a limitations period) related to that proceeding." *Smith v. Bayer Corp.*, 564 U.S. 299, 313 n.10 (2011) (emphasis added). Put simply, the advantages of tolling articulated by the Supreme Court in *American Pipe* and *Crown Cork* do not apply to revived claims by class representatives. *See id.* The purpose of tolling during a class action was to reduce duplicative filings by encouraging unnamed class members to wait on filing their own complaints. *See American Pipe*, 414 U.S. at 553-554. To allow tolling for a named representative does not decrease duplicative filings as the named representative has already filed a complaint, and likely motions, on the issue. Because Dr. Weitzner was a class representative below, *American Pipe* tolling does not apply to Dr. Weitzner's individual claim. Therefore, summary judgment will be granted in favor of Defendants for Dr. Weitzner's individual claim.

It is important to remember that "the tolling rule of American Pipe is a generous one, inviting abuse." *Crown, Cork & Seal Co., Inc.*, 462 U.S. at 354 (1983) (Powell, J. concurring). It is in this vein that Defendants argue that allowing the P.C. to raise an individual claim contravenes the purpose of *American Pipe*, and *Leyse.* At bottom, Defendants argue that the P.C. is simply a shell used by Dr. Weitzner to revive the same claim, based on the same fax transmissions, that failed in state court. As was noted above, it is not the intent of *American Pipe* to protect those who "initiated the prior class action." *See Leyse*, 538 Fed. App'x at 162.

Dr. Weitzner is the sole shareholder of the P.C., and as he notes, he "has always identified the P.C. with [himself]." (Doc. 116, ¶ 2). In fact, Plaintiffs acknowledge and admit[12] that Dr. Weitzner believes he and the P.C. are one. (Doc 106, ¶ 14). He bases the claims brought on behalf of himself and the P.C. on identical

---

[12] Plaintiffs failed to deny that Dr. Weitzner believes he and the P.C. are the same entity in their Answer to Defendants' Statement of Facts. As such, the fact was deemed admitted.

evidence: the First and Second Fax. In every meaningful way, Dr. Weitzner would be the beneficiary of the P.C.'s individual claim, and thus tolling would serve protect a Plaintiff "who initiated the prior action." *Id.* Allowing the P.C., on these facts, to seek shelter from the statute of limitations through the use of the *American Pipe* tolling rule would condone the abuse of *American Pipe*. For this reason, *American Pipe* tolling will not apply to the P.C.'s individual claim, and this Court will grant summary judgment in favor of the Defendants.

### V. Conclusion

For the above stated reasons: Defendants' Motion to Strike the November 29, 2016 Declaration of Ari Weitzner will be denied; Defendants' Motion to Strike Plaintiffs' Answer to Defendants' Statement of Facts will be granted in part as Plaintiffs' failed to comply with the Local Rules; and Defendants' Motion for Summary Judgment will be granted in its entirety because *American Pipe* tolling does not apply to shield those who initiated a prior action and subsequently assert the same facts and claims in a new action. Finally, Plaintiffs' Motion for Class Certification is moot because this Court will grant Defendants' Motion for Summary Judgment.

An appropriate order follows.


 September 6, 2017                                     /s/ A. Richard Caputo
Date                                                   A. Richard Caputo
                                                       United States District Judge

28